**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MATU THREATT<br>2559 N Front Street<br>Philadelphia, PA 19133<br><br>Plaintiff,<br><br>v.<br><br>PUBLIC HEALTH MANAGEMENT CORPORATION<br>Centre Square East 1500 Market Street, Suite 1500<br>Philadelphia, PA 19102<br><br>Defendant. | Civil Action No.: ____________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT – CIVIL ACTION

Plaintiff, Matu Threatt ("Plaintiff"), by and through his undersigned attorney, for his Complaint against Defendant Public Health Management Corporation ("Defendant"), alleges as follows:

## INTRODUCTION

1. Plaintiff initiates this action contending that Defendant has violated Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* Specifically, Plaintiff contends that Defendant subjected him to differential treatment and unlawful termination on the basis of his sex and retaliated against him for his complaint(s) in connection thereto, in violation of Title VII and the PHRA.

## PARTIES

2. Plaintiff, Matu Threatt, is a citizen of the United States and Pennsylvania and currently maintains a residence at 2559 N Front Street Philadelphia, PA 19133.

3. Upon information and belief, Defendant, Public Health Management Corporation, is a non-profit company organized and existing under the laws of the Commonwealth of Pennsylvania and maintains a principal place of business located at Centre Square East 1500 Market Street Suite 1500 Philadelphia, PA 19102.

## JURISDICTION AND VENUE

4. On or about July 9, 2025, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Pennsylvania Human Relations Commission ("PHRC"), thereby satisfying the requirements of 42 U.S.C. § 2000e5(b) and (c), and 43 P.S. § 959(a). Plaintiff's EEOC Charge was docketed as EEOC Charge No. 530-2025-07960. Plaintiff's EEOC Charge was filed within one hundred and eighty (180) days of the unlawful employment practice.

5. By correspondence dated August 20, 2026, Plaintiff received a Notice of Rights to Sue from the EEOC regarding his Charge, advising him that he had ninety (90) days to file suit against Defendant.

6. Plaintiff filed the instant action within the statutory time frame applicable to his claims.

7. Plaintiff has therefore exhausted his administrative remedies and has complied with all conditions precedent to maintain this action.

8. This is an action authorized and instituted pursuant to the PHRA, and Title VII.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as it is a civil rights action arising under the laws of the United States.

10. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367, as those claims arise out of the same common nucleus of operative facts as his federal claims.

11. The venue in this district is proper to 28 U.S.C. § 1391, as the parties reside in this judicial district, doing business herein, and the unlawful practices of which Plaintiff is complaining were committed in the Commonwealth of Pennsylvania.

## FACTUAL ALLEGATIONS

12. The preceding paragraphs are hereby incorporated by reference as though the same fully set forth at length herein.

13. Plaintiff began his employment with Defendant on or about May 20, 2024, in the position of Director of Recruiting.

14. Plaintiff worked under Managing Director Jeri White Papa and Chief People & Inclusion Officer Celeste Collins.

15. Plaintiff's department was comprised almost entirely of women, including Managing Director of Compensation Antonela Padula, Recruiter LeAnne Hall-Stowe (who was Plaintiff's direct report), and Manager of Credentialing and Onboarding Lynette Smith.

16. At all times material hereto, Plaintiff performed his job well and received no justifiable discipline.

17. Despite Plaintiff's exceptional performance, however, he was routinely ostracized and excluded from department operations and treated as an outcast.

18. By way of example, Celeste Collins and Jeru White Papa frequently ignored Plaintiff's attempts to communicate with them regarding a recruiting plan he had prepared.

19. Thereafter, Ms. Collins and Ms. Papa held department meetings without Plaintiff's knowledge where recruiting matters were discussed.

20. Plaintiff only became aware of these meetings when his direct report LeAnne Hall-Stowe asked him why he had not been present.

21. Upon information and belief, Ms. Collins and Ms. Papa also encouraged others in the department, such as Antonela Padula, to go against Plaintiff on certain matters related to recruiting.

22. Plaintiff attempted to meet with Ms. Papa and Ms. Collins on numerous occasions to discuss his concerns, but his requests were ignored.

23. On or about August 23, 2024, Plaintiff reached out to Defendant's Human Resources Business Partner Donna Hollins to discuss his concerns regarding the differential treatment to which he was being subjected.

24. During their meeting, Ms. Hollins opined that the fact that Plaintiff was a man was contributing to the lack of communication, adding that, "There is a reason this entire department is middle-aged women."

25. Ms. Hollins further advised that if these issues continued, Plaintiff should escalate his concerns to Defendant's CEO Michael Pearson.

26. Despite reaching out to Ms. Hollins, Plaintiff continued to be subjected to differential treatment on the basis of his sex and/or gender.

27. On or about August 27, 2024, the department was working on hiring requests with a subsidiary of Defendant called Fairwold Academy, for which their main point of contact was the school's Managing Director of Finance Seth Jones.

28. Ms. Papa suggested that Plaintiff be the one to deal with Mr. Jones simply because they were both men, specifically stating, "Maybe it's a man thing."

29. Ms. Collins would also deliberately call Plaintiff by an incorrect first name in front of others, further compounding his alienation within the department.

30. On one of the rare occasions where Ms. Papa met with Plaintiff to discuss recruiting matters, she told Plaintiff that his ideas would be better received "if they came from someone else."

31. Ms. Papa and Ms. Collins also moved hiring events Plaintiff was supposed to be a part of to new dates during which they knew Plaintiff would be unavailable.

32. By way of example, a hiring event scheduled for Tuesday October 22 was moved to Friday October 18.

33. The entire department knew Plaintiff would be unavailable on October 18 due to his wedding, for which he had reserved time off many months in advance.

34. On January 9, 2025, pursuant to Donna Hollins' advice, Plaintiff reached out to CEO Michael Pearson and made a formal complaint detailing the differential treatment to which he was being subjected by Ms. Papa and Ms. Collins.

35. Mr. Pearson responded on January 23, 2025, stating, "Someone should be reaching out to you soon on this matter."

36. On February 4, 2025, Defendant's Managing Director of Corporate Risk and Legal Affairs Dan Radlich contacted Plaintiff via email with Ms. Collins cc'd and stated, "I have investigated your concerns, and have concluded that they raise disagreements over operational issues that should be discussed and resolved within HR. I am copying Celeste and will give the same message to Jery, so that you can all align on recruiting priorities."

37. Abruptly, on February 10, 2025, and in close temporal proximity to his complaints of being subjected to differential treatment, Defendant terminated Plaintiff's employment due to an alleged reduction in force.

38. Tellingly, however, Plaintiff was the only employee terminated in his department, which was otherwise comprised almost entirely of women.

39. Based on the foregoing, it is believed and therefore averred that Defendant terminated Plaintiff on the basis of his sex and in retaliation for his good faith complaint(s) in connection thereto, in violation of Title VII and the PHRA.

40. As a result of Defendant's deliberate, unlawful, wanton, and malicious actions as set forth above, Plaintiff has suffered damages, as well as mental anguish, emotional pain and suffering, emotional distress, humiliation, and damage to reputation.

**COUNT I**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C § 2000e, *et seq.***
**SEX DISCRIMINATION & RETALIATION**

41. The preceding paragraphs are hereby incorporated by reference as though the same were fully set forth at length herein.

42. At all times material hereto, Defendant employed at least fifteen (15) employees at its locations at all times relevant hereto.

43. Plaintiff is male and as such is a member of a class protected under Title VII from unlawful discrimination because of sex.

44. Defendant undertook tangible employment action against Plaintiff, in the form of termination from employment, because Plaintiff complained of the sex-based discrimination in violation of Title VII.

45. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical well-being.

46. Because of Defendant's deliberate, unlawful, wanton, and malicious actions as set forth above, Plaintiff has suffered damages, including but not limited to, loss of earnings, earnings potential, other significant economic benefits, mental and emotional damages, loss of reputation, personal humiliation, and loss of life's enjoyment.

**WHEREFORE**, as a result of the unlawful conduct of Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back pay, front pay, and bonuses in an amount to be determined at trial, but no less than one hundred and fifty thousand dollars ($150,000);

B. Compensatory damages in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

C. Punitive damages in an amount to be determined at trial, but sufficient to punish Defendant for its intentional, negligent, willful, wanton, and/or malicious conduct;

D. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

E. Pre-judgment interest in an appropriate amount; and

F. Such other and further relief as is just and equitable under the circumstances.

G. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

**COUNT II**
**PENNSYLVANIA HUMAN RELATIONS ACT**

**43 P.S. § 951, et seq.**
**SEX DISCRIMINATION & RETALIATION**

47. The preceding paragraphs are hereby incorporated by reference, as though the same were fully set forth at length herein.

48. At all times material hereto, Defendant had at least four (4) employees.

49. Plaintiff is male and as such is a member of a class protected under the PHRA from unlawful discrimination because of sex.

50. Defendant undertook tangible employment action against Plaintiff, in the form of termination from employment, because he complained of gender-based discrimination, in violation of PHRA.

51. Defendant acted with malice and reckless indifference to Plaintiff's civil rights and emotional and physical wellbeing.

52. As a result of Defendant's deliberate, unlawful, and malicious actions as set forth above, Plaintiff has suffered loss of earnings, raises, other significant economic benefits, emotional pain and suffering, emotional distress and humiliation.

53. The conduct described above constitutes a violation of the PHRA and affords Plaintiff the opportunity to seek any and all remedies available under said Act.

**WHEREFORE**, as a result of the unlawful conduct of the Defendant, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant him the maximum relief allowed by law, including, but not limited to:

A. Back wages, front pay, bonuses, and compensatory damages in an amount to be determined at trial, but not less than one hundred and fifty thousand dollars ($150,000.00);

B. Plaintiff's costs, disbursements, and attorney's fees incurred in prosecuting this action;

C. Pre-judgment interest in an appropriate amount; and

D. Such other and further relief as is just and equitable under the circumstances; and,

E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages as set forth by applicable law.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**MURPHY LAW GROUP, LLC**

By: */s/ Johannes Hoffman, Esq.*
Johannes Hoffman, Esq.
Michael Murphy, Esq.
Eight Penn Center, Suite 2000
1628 John F. Kennedy Blvd.
Philadelphia, PA 19103
TEL: 267-273-1054
FAX: 215-525-0210
jhoffman@phillyemploymentlawyer.com
murphy@phillyemploymentlawyer.com
*Attorneys for Plaintiff*

Dated: October 15, 2026

**DEMAND TO PRESERVE EVIDENCE**

The Defendant is hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims and her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.